**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mandy Waterhouse, ) | No. CV 25-00508-TUC-JGZ (MAA) |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Commissioner of Social Security) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

The plaintiff, Mandy Waterhouse, filed this action for review of the final decision of the Commissioner of the Social Security Administration denying Title XVI disability benefits. Doc. 1, p. 1.  She argues that the Administrative Law Judge "erred in finding the claimant's history of depression, anxiety, and post traumatic stress disorder non-severe."  Doc. 16, p. 2.

The case has been referred to the United States Magistrate Judge for a report and recommendation pursuant to the Rules of Practice of this court.  Doc. 9.

The Magistrate Judge recommends that the District Court, after its independent review, affirm the final decision of the Commissioner.  The ALJ's finding that the claimant's mental impairments are not severe was based on substantial evidence.  The ALJ provided clear and convincing reasons for discounting the claimant's subjective symptom testimony.  The claimant's "residual functional capacity" contained all of the functional limitations that the ALJ found credible.

PROCEDURAL HISTORY

On November 14, 2021, Waterhouse constructively filed an application for Title XVI Supplemental Security Income.  Administrative Record, AR 17.  She alleged disability beginning on December 23, 2021.  AR 17.  Waterhouse's application was denied initially and upon reconsideration.  AR 17.

She requested review and appeared before Administrative Law Judge (ALJ) Yasmin Elias on May 13, 2024.  AR 17, 43.  The ALJ issued a decision denying benefits on September 24, 2024.  AR 17-35.  The Appeals Council denied Waterhouse's request for review on August 13, 2025, making the decision of the ALJ the final decision of the Commissioner.  AR 1. Waterhouse subsequently filed this action appealing that final decision.  Doc. 1.

CLAIM EVALUATION

To qualify for disability benefits, the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in "substantial gainful activity" due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 1382c(a)(3)(A).  "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her] or whether [she] would be hired if [she] applied for work."  42 U.S.C. § 1382c(a)(3)(B).

Social Security Administration (SSA) regulations require that Title XVI disability claims be evaluated pursuant to a five-step sequential process.  20 C.F.R. § 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(a)(4).  If so, then the claimant is not disabled and benefits are denied.  *Id.*  If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a "severe" impairment or combination of

impairments. 20 C.F.R. § 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to evaluate whether the claimant has an impairment that significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id*. If the ALJ concludes there is no "severe" impairment, the claim is denied. *Id*.

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that are so limiting as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. § 416.920(a)(4). If yes, then the claim is denied. *Id*. If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4).

"To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404 Subpt. P, App. 2 or on the testimony of a vocational expert." *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). "Given its inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Id*. at 1160.

The ALJ's Findings

At step one of the disability analysis, the ALJ found that the claimant "has not engaged in substantial gainful activity since November 14, 2021, the application date . . . ." AR 20. At step two, she found that the claimant "has the following severe impairments: degenerative disc

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 416.945.

- 3 -

disease, osteoarthritis of the bilateral hands, and peripheral neuropathy. . . ." AR 20.  She found that the claimant's mental impairments, however, were non-severe.

At step three, the ALJ found that the claimant "does not have an impairment that meets or medically equals the severity of one of the listed impairments in  20 CFR, Part 404, Subpart P, Appendix 1 . . . ."  AR  25.

The ALJ then analyzed the claimant's residual functional capacity (RFC) and found that she "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps and stairs, occasionally stoop, kneel, crouch, and crawl, never climb ladders, ropes, or scaffolds, frequently handle, finger, and feel with right upper extremity, and work in an environment with only occasional exposure to extreme cold, vibration, and work hazards."  AR 27.

At step four, the ALJ found the "claimant has no past relevant work. . . ."  AR 34. Nevertheless, at step five, the ALJ found there are jobs that exist in significant numbers in the national economy that she can perform relying on the testimony of the vocational expert.  AR 34-35.  Accordingly, the ALJ found that the claimant is not disabled in her decision issued on September 24, 2024.  AR 35.

STANDARD OF REVIEW

The findings of the Commissioner are meant to be conclusive.   42 U.S.C. §§ 405(g), 1383(c)(3).  The court "will disturb the [ALJ's] denial of benefits only if the decision contains legal error or is not supported by substantial evidence."  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (punctuation modified).  "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  "If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Id*.  Moreover, the court "may affirm the ALJ's decision even if the ALJ made an error, so long as the error was harmless, meaning it was inconsequential to the ultimate nondisability determination."  *Id*.

Step Two Analysis of the Claimant's Mental Impairments

Waterhouse argues that the "ALJ's finding that Ms. Waterhouse's anxiety, depression, and PTSD are non-severe [at step two of the disability analysis] is not based on substantial evidence." Doc. 16, p. 8.

The ALJ's analysis of Waterhouse's mental impairments reads in pertinent part as follows:

> The medical evidence of record contains diagnoses of mental impairments, including anxiety, depression, and posttraumatic stress disorder. Treatment included therapy (Exhibit C22F).
>
> However, treatment records show limited clinical findings. In September 2023, the claimant was restless with rapid speech, anxious and depressed mood, anxious affect, tangential thought processes, and paranoid thought content. However, the exam was otherwise largely normal as the claimant was alert and cooperative with appropriate appearance and grooming, adequate attention and concentration, normal intellectual functioning, and fair insight and judgment (Exhibit C22F/3). In February 2024, the claimant had paranoid thought content and poor insight and judgment, but the exam was otherwise normal. The claimant was alert, fully oriented, and cooperative with euthymic mood and affect, normal attention, articulate speech, normal intellect, and good insight and judgment (Exhibit C22F/13). In April 2024, a mental status exam was normal. The claimant was alert, fully oriented, and cooperative with euthymic mood and affect, normal attention, articulate speech, normal thought content, goal directed thought process, normal intellect, and good insight and judgment (Exhibit C22F/8).

AR 21-22 (citing Progress Notes from Pathways, C22F, AR 1687-1764). The ALJ found that while Waterhouse displayed certain mental health symptoms, the medical record on the whole showed limited clinical findings.

The ALJ also considered the consultative examination conducted by Noelle Rohen Ph.D. as follows:

> Similarly, there were few clinical findings at the October 2022 psychological consultative examination and the claimant otherwise demonstrated good mental function. Dr. Rohen noted the claimant's thoughts were tangential and her responses overinclusive, and she was extremely difficult to redirect. Dr. Rohen noted the vast majority of the perseveration was on her mother's misdeeds currently, and over the years. She noted the other challenge was the claimant's statements that things were one way, only to eventually tell the story another way with a different outcome (e.g., with her legal status, or treatment history). Otherwise, Dr. Rohen noted normal findings. The claimant was dressed casually, and hygiene and grooming appeared to be within normal limits. Eye contact was good, and the claimant was cooperative. Affect was full range. Retrograde memory appeared grossly adequate to provide history. Her fund of knowledge was estimated to be average. The rate and flow of her speech were within normal limits, though speech was mildly pressured. The Folstein Mini Mental Status Examination was administered, on which the claimant achieved a score of 30 out of a possible 30 on the exam (Exhibit C10F).

AR 22 (citing C10F, AR 1386-1391).  Rohen opined that Waterhouse would do better if she could work "on her own" and might be happier "in a lower demand and more static position." AR 33.  The ALJ found Rohen's opinion "not persuasive" as "not supported by Dr. Rohen's exam findings" and "inconsistent with the medical evidence of record."  AR 33.

The ALJ also considered the consultative examination conducted by Gwendolyn Johnson, Ph.D. as follows:

> Additionally, findings were normal at the June 2023 psychological consultative examination conducted by Gwendolyn Johnson, Ph.D. (Exhibit C19F). The claimant was casually dressed, and her appearance reflected adequate grooming and hygiene. Her general attitude was cooperative. Her eye contact was direct and steady. The claimant's expressive and receptive language abilities were good. The rate, amplitude, and flow of speech were within normal limits.  The claimant's mood was euthymic, and her affect was full arrange [sic] and appropriate to mood state. The form and content of thought processes were unremarkable. Her sensorium was clear upon examination. The claimant denied any history of sensory/perceptual disturbance, or of delusional/paranoid thought. The claimant demonstrated average abstracting ability and judgment through the interpretation of common sense situations. She demonstrated an adequate fund of knowledge and range of ideas. It appeared from her general response style and vocabulary that the claimant was intact cognitively. Her intellectual levels appeared to be in the average range and her attention was good. The claimant's immediate, short-term memory and remote memory systems were grossly intact. Her concentration was tested through basic calculations and her performance was good. The claimant scored 30/30 on the Mini-Mental State Exam (Exhibit C19F).

AR 22 (citing C19F, AR 1660-1665).  Johnson opined that Waterhouse's mental impairments do not impose any limitations.  AR 33.  The ALJ found her opinion "persuasive as it is supported by Dr. Johnson's exam findings and is consistent with the medical evidence of record. . . ."  AR 33.

The ALJ also considered Waterhouse's mental status exams as follows:

> Lastly, mental status exams at medical appointments were normal. The claimant was noted to be alert and fully oriented with normal insight and judgement, normal memory, normal mood and affect, normal social interaction and communication, normal grooming, normal attitude, unimpaired thought process, and normal thought content, and was able to understand and follow commands (Exhibits C9F; C11F/65, 66, 67, 114, 115; C13F/11, 13, 14; & C26F/77, 85, 93, 102, 110, 120, 126, 137, 145, 177, 185, 193, 201, 210, 217, 224,234,241, 250, 262, 288, 296, 304, 316, 325).

AR 22.

The ALJ considered the treatment record and the examinations conducted by the psychological consultants.  The ALJ noted that at times, Waterhouse showed mental health

symptoms such as "restless[ness] with rapid speech, anxious and depressed mood, anxious affect, tangential thought processes, and paranoid thought content." AR 21-22.  Nevertheless, the ALJ found that on the whole, the medical record showed limited clinical findings. Waterhouse often appeared "alert and fully oriented with normal insight and judgement, normal memory, normal mood and affect, normal social interaction and communication, normal grooming, normal attitude, unimpaired thought process, and normal thought content." AR 21-22.  The ALJ concluded that "[t]he claimant's medically determinable mental impairments, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." AR 22.  The ALJ's finding is supported by substantial evidence.

Waterhouse argues to the contrary that the ALJ erred by relying on the "otherwise largely normal" exam findings.  Doc. 16, p. 9.  She argues this is an "oversimplification" that "blatantly discounts supplemental commentary in provider notes . . . ."  Doc. 16, p. 9.  The court agrees that reasonable minds could have considered the same evidence and reached a different conclusion.  Nevertheless, "[i]f the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (punctuation modified).

Waterhouse notes that the ALJ "erroneously cited a February 2024 exam as an example of euthymic mood and affect and good insight and judgment."  Doc. 16, p. 9 (punctuation modified); *see* AR 21.  The court agrees and finds that the relatively positive findings cited by the ALJ actually appear in the *April 2024* exam notes.  *See* AR 21; compare C22F/13, AR 1699 with C22F/8, AR 1694.  The court concludes that while the ALJ made a citation error, she accurately represented this portion of the medical record.  The ALJ's error does not affect the court's analysis or the ultimate nondisability determination.  *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

The Claimant's Subjective Symptom Testimony

In accordance with the regulations regarding the evaluation of mental impairments, the ALJ considered the "paragraph B" criteria.  These are "four broad functional areas," which are

designed to help the ALJ analyze the claimant's level of functional limitation: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3); AR 23. The claimant's level of limitation is rated using a "five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). "The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* If the claimant's limitation is rated "none" or "mild," the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities. . . ." 20 C.F.R. § 416.920a(d)(1).

In the area of "understand, remember, or apply information," the ALJ rated Waterhouse's level of limitation as "none." She based this finding on the medical evidence showing "the claimant demonstrated good attention and concentration, as well as unimpaired cognition, thought process and memory." AR 23.

In the area of "interacting with others," the ALJ found Waterhouse has mild limitation. AR 23. The ALJ acknowledged that Waterhouse "contends she has problems getting along with others," but the ALJ noted numerous places in the medical record showing "the claimant is cooperative and maintains appropriate eye contact." AR 23. The ALJ further noted that Waterhouse "admits she can engage in activities that take her out into the community, such as shopping." AR 23.

"With regard to concentration, persisting, or maintaining pace," the ALJ found that Waterhouse "has a mild limitation." AR 23. The ALJ acknowledged that Waterhouse "contends that she has trouble completing tasks and concentrating," but the ALJ found that the medical record "does not support more than a mild limitation." AR 23. Moreover, the ALJ found that Waterhouse's activities such as her ability to perform household chores or manage her own finances show "some ability to sustain focus and attention and see a task through to completion." AR 23.

In the area of "adapting or managing oneself," the ALJ found Waterhouse has "a mild limitation." AR 23. While Waterhouse "contends that she does not handle stress or changes

in routine very well," the ALJ found that the medical record contains evidence of "appropriate judgment and insight, cooperative behavior, and no abnormalities of dress or grooming." AR 23. Moreover, "for the period under adjudication, the claimant has not required intensive or structured mental health care." AR 23.

The ALJ concluded that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere. . . ." AR 23.

Waterhouse argues to the contrary that the medical record contains evidence indicating a higher level of functional impairment. She points to Rohen's medical report in which Rohen stated that her "tangentiality and hyper verbosity/over inclusivity were both problems that may impact her ability to work with or around others and that she will continue to experience largely trauma-related difficulty with social relating." Doc. 16, p. 10. She explains that she "expressed directly to the ALJ that it is hard to trust others or even the police because of [her] experiences." *Id*. She notes that she is described repeatedly as "being difficult to ground even momentarily, easily getting caught in tangential patterns, or even at times dissociative." Doc. 16, p. 11. She asserts that Dr. Sandip Sen, on reconsideration, opined that she has moderate limitations in sustaining concentration, persistence and pace. Doc. 16, p. 11. Finally, she notes that she "described having two or three panic attacks in the year leading up to the hearing, lasting one hour to three days. . . ." Doc. 16, p. 11. She argues this "suggests at least a moderate limitation in Plaintiff's ability to adapt or mange herself. . . ." Doc. 16, p. 11.

The court agrees that the record contains evidence from which a reasonable person could find a higher level of functional impairment. Nevertheless, the court finds that the ALJ supported her evaluation of the "paragraph B" criteria with substantial evidence.

Waterhouse further argues that the ALJ failed to properly consider her subjective symptom testimony. Doc. 16, p. 6. She asserts that "the ALJ can reject her subjective testimony regarding the severity of her alleged symptoms only be offering specific, clear and convincing

reasons for doing so.  Doc. 16, p. 7 (citing *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017)).

In her decision, the ALJ acknowledged that "once an underlying . . . mental impairment(s) that could reasonably be expected to produce the claimant's . . . other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." AR 27; *see* 20 C.F.R. § 416.929(c) ("Evaluating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work . . ."). The ALJ then considered the evidence in the record of mental limitation. She concluded that the RFC did not need to include mental accommodations because Waterhouse's "mental impairments do not impose functional limitations." AR 29. She explained that "[t]he medical evidence shows treatment to be conservative as it has not included inpatient or intensive outpatient treatment during the period under adjudication. Additionally, except for some findings limited to three exams, mental status exams were otherwise normal . . . ." AR 29.

The ALJ also considered the opinions of the reviewing psychologist Susan Kaz, Psy.D., who opined that Waterhouse had only mild limitations in her "paragraph B" criteria and her mental impairments were non-severe. AR 32. The ALJ considered that opinion "persuasive as it is supported and consistent with the medical evidence of record, which shows few clinical findings and otherwise normal mental status exams." AR 32.

The ALJ also considered the opinions of the reviewing psychiatrist Sandip Sen, M.D., who opined that Waterhouse had mild and moderate limitations. AR 32. The ALJ found his opinions "not persuasive" because he cited only "normal exams" in support of his "moderate" findings, and his findings are "inconsistent with the medical evidence of record." AR 32.

As discussed above, the ALJ also considered the opinions of the consultative examiners, Noelle Rohen, Ph.D., and Gwendolyn Johnson, Ph.D. AR 33.

The ALJ considered Waterhouse's subjective symptom testimony. She also considered contrary evidence in the record such as the conservative nature of Waterhouse's mental health

treatment, the opinions of the reviewing psychiatrist and psychologists, and Waterhouse's description of her own activities.   The ALJ concluded that Waterhouse's mental impairments result in only mild "paragraph B" limitations.  They do not limit her ability to work, and the RFC need not include mental accommodations.  AR 29.

"The standard [of review] isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).  And here, it is.  *See, e.g., Smartt*, 53 F.4th at 496–97 ("The ALJ properly discounted Smartt's subjective pain testimony and self-reported limitations because (1) the objective medical evidence was inconsistent with those limitations, (2) Smartt acknowledged that she routinely performed several daily activities, notwithstanding her caveats, and (3) generally her treatment had been conservative.").  The ALJ provided "specific, clear and convincing reasons" for discounting Waterhouse's subject symptom testimony.  *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see also Smartt*, 53 F.4th at 499 ("[A]n ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . .") (punctuation modified).

Finally, Waterhouse argues that the ALJ should have included in her RFC the limitations resulting from all of her medically determinable impairments.  Doc. 16, pp. 12-13.  And she asserts that the ALJ's failure to do so is reversible error.  Doc. 16, p. 13.  The court disagrees.

The ALJ need only include in the RFC "all of the limitations that the ALJ found credible and supported by substantial evidence in the record."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  And the ALJ has done so here.

In her reply brief, Waterhouse argues that her "mild" limitations in three of the "paragraph B" areas must have had *some* effect on her ability to work.  Doc. 19, p. 2.  And the ALJ's failure to include those limitations in her RFC was error.  The court disagrees.

"A non-severe limitation by its very definition has nothing more than a minimal limitation on Plaintiff's ability to do basic work activities." *Christian v. Comm'r of Soc. Sec. Admin.*, No. CV 20-00356-TUC-SHR (LAB), 2022 WL 190383, at *2 (D. Ariz. Jan. 21, 2022) (punctuation modified).  "Furthermore, a mild mental limitation can present no significant

- 11 -

interference with the ability to perform basic work-related activities." *Id*. And that is what the ALJ found here. AR 29 ("The residual functional capacity does not include mental accommodations as the claimant's mental impairments do not impose functional limitations."); *see Burke v. Comm'r of Soc. Sec. Admin*., No. CV 24-00161-TUC-JCH (MAA), 2024 WL 5508599, at *6 (D. Ariz. Oct. 9, 2024) (collecting cases where "mental impairments were overall mild and did not need to be included in the RFC"), report and recommendation adopted, CV-24-00161-TUC-JCH, 2025 WL 914303 (D. Ariz. Mar. 26, 2025); *see also Frary v. Comm'r of Soc. Sec*., 2021 WL 5401495, at *10-*16 (E.D. Cal. Nov. 18, 2021) (collecting cases on both sides of the issue).

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, affirm the final decision of the Commissioner. The ALJ's finding that the claimant's mental impairments are not severe was based on substantial evidence. The ALJ provided clear and convincing reasons for discounting the claimant's subjective symptom testimony. The claimant's residual functional capacity contained all of the functional limitations that the ALJ found credible.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 14 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response without leave of the District Court.

DATED this 10th day of March, 2026.

Honorable Michael A. Ambri
United States Magistrate Judge

- 12 -